UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff/Respondent, ) | Criminal Action No. |
| ) | 6:18-cr-00044-CHB-MAS-4 |
| v. ) | and |
| ) | Civil Action No. |
| JAMES TIMOTHY THORNTON, ) | 6:20-cv-00218-CHB-MAS |
| ) | |
| Defendant/Movant. ) | |
| ) | |

**REPORT & RECOMMENDATION**

This matter is before the undersigned on Petitioner James Timothy Thornton's ("Thornton") Motion to Vacate, Set Aside, or Correct a Sentence pursuant to 28 U.S.C. § 2255. [DE 205].[1] Thornton alleges that his trial counsel was ineffective and, briefly, that the evidence was insufficient to support his conviction. The Court perceives an evidentiary hearing as unnecessary to resolve the motion, as discussed below. Based on review of the full record, the Court recommends denial of Thornton's § 2255 motion and denial of a certificate of appealability on the issues raised.

**I.     RELEVANT FACTUAL BACKGROUND**

On October 2, 2018, Thornton appeared before the Court on an Indictment alleging that he conspired to distribute 50 or more grams of methamphetamine in violation of 21 U.S.C. §§ 841 and 846. [DE 1 (Indictment), 12 (Minutes)]. The following May, Defendant pleaded guilty to the Indictment's sole count before District Judge Claria Horn Boom. [DE 102]. Thornton entered an open plea, and there was no written plea agreement between the parties.

---

[1] Record citations reference the underlying criminal docket.

Judge Boom conducted Defendant's sentencing hearing on October 29, 2019. [DE 158]. The Court adopted the unchallenged Presentence Investigation Report and Addendum ("PIR") as its findings. [*Id.*]. Thornton faced a 10-year mandatory minimum sentence based on his conviction for conspiracy to distribute 50 grams or more of actual methamphetamine. 21 U.S.C. § 841(b)(1)(A). [*See* PIR at 1]. The United States Probation Office's ("USPO") ultimate relevant conduct determination, as adopted by Judge Boom at sentencing, in total reflected a 15.0309-kilogram quantity of actual methamphetamine attributable to Thornton. [*Id.* at 5]. With this quantity and a three-level reduction for acceptance of responsibility, Thornton's offense level was 35. Based on his criminal history category of III, Thornton's Guidelines range was 210-262 months' imprisonment. [*Id.* at 18]. Judge Boom varied downward and sentenced Thornton to 174 months' imprisonment, to be followed by five years of supervised release. [DE 159].

Appointed counsel represented Thornton at all stages of the proceeding. Thornton did not file a direct appeal. Thornton timely filed the instant § 2255 motion, which the Government opposes on its merits. [DE 205, 213]. Thornton replied. [DE 217]. For the reasons outlined in this Report and Recommendation, the Court recommends that the District Judge deny Thornton's petition as to all grounds raised.

## II.    ANALYSIS

Under § 2255, a federal prisoner may obtain relief if his sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such sentence, or the sentence exceeds the maximum authorized by law. 28 U.S.C. § 2255(a); *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003) ("In order to prevail upon a § 2255 motion, the movant must allege as a basis for relief: '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001))).

A constitutional basis for § 2255 relief requires "an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)). Any non-constitutional error must constitute a "'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990). A § 2255 movant typically must prove any factual assertions by a preponderance of the evidence. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (*per curiam*).

Thornton urges two primary bases for collateral relief. First, he argues that there is insufficient evidence that he conspired to distribute 50 grams or more of actual methamphetamine, as required to sustain his conviction, and that his counsel was ineffective for failing to further investigate the quantity ("Ground 1"). Ground 1, as clearly framed in Thornton's petition, concerns only the threshold conviction quantity of 50 grams or more of actual methamphetamine and the body of evidence to support it. He expressly references the 50-gram quantity, the information before him (and that he had discussed with his lawyer) at the guilty plea phase, and "the basis for [his] conviction" in his brief Ground 1 argument; he does not mention the sentencing stage or that separate quantity. [DE 205 at Page ID # 696]. Accordingly, even leniently construing Thornton's allegations, the Court reads the challenge in his petition specifically as one to his conviction and the quality and impact of his lawyer's advice preceding it.

The briefing as to Ground 1, however, touches on findings and documents made and prepared at various stages of the case, including for sentencing purposes (*e.g.*, the PIR, which in part summarizes evidence previously disclosed to the defendant throughout the case). Consequently, Ground 1 blends issues surrounding the sentencing quantity, which was

3

significantly higher than 50 grams and is subject to markedly different standards and burdens of proof. To the extent Thornton references or raises separate claims related to Judge Boom's quantity determination at sentencing in his reply brief, however, they were not present in his original petition and may not be considered. *See Baumgartner v. United States*, No. 3:18-CV-177-PLR, 2019 WL 2195226, at *4 (E.D. Tenn. May 21, 2019) (reciting the general rule that arguments raised for the first time in a reply brief are waived and applying it in the § 2255 context). The Court therefore tailors its Ground 1 analysis in accordance with Thornton's properly alleged grounds for relief. Nonetheless, given Thornton's *pro se* status and to ensure a full record for Judge Boom, the Court briefly discusses and recommends rejection of any such sentencing quantity on its merits.

Finally, Thornton argues that his counsel failed to discuss his plea options with him or to adequately apprise him of the consequences of entering an open plea, including explaining the Guidelines ("Ground 2"). The Court discusses and ultimately recommends rejecting each of Thornton's claims for the reasons stated below.

A. **GROUND 1**

　　1. **Sufficiency of the Evidence**

The Court recommends that Judge Boom reject Thornton's petition insofar as he claims that there was insufficient evidence to support his conviction for conspiring to distribute 50 grams or more of actual methamphetamine. Sufficiency of the evidence claims ordinarily are not cognizable on collateral review. *See United States v. Luke*, No. 615CR00010, 2018 WL 6567073, at *2 (E.D. Ky. Mar. 21, 2018), *report and recommendation adopted*, No. 615CR0010, 2018 WL 5818350 (E.D. Ky. Nov. 7, 2018) (collecting substantial authority for the proposition that such claims may be raised only on direct review). To avoid the bar, Thornton would have to establish

4

cause excusing his failure to raise the issue on direct review and actual prejudice stemming from the default or actual innocence. Thornton has not attempted to show or shown either. Thornton alleges that he questioned the credibility of Co-Defendant Marti Smith ("Smith), whose statements to law enforcement and prosecutors formed (in part) the evidentiary basis for Thornton's quantity determination before he pleaded guilty. He further states that, prior to changing plea, he addressed with counsel the evidentiary role of Smith's statements. Without question, Thornton knew the facts relevant to the substance purity and quantity questions he now poses. There is no apparent cause for his failure to raise the issue in a direct appeal. Moreover, because the record confirms that there was sufficient evidence supporting Thornton's plea and conviction, there was no prejudice, and Thornton has not shown that he is actually innocent of the 50-gram conviction quantity.

Even accepting Thornton's factual allegations, he discussed with his counsel the statements made by Smith to law enforcement concerning her and Thornton's joint methamphetamine trafficking activities. The PIR further expands on Smith's testimony to investigators in detail, recounting numerous trips with specific, high-volume amounts. [PIR at 3-6]. At Thornton's change of plea hearing, counsel for the United States stated that it was prepared to introduce and had produced for Defendant evidence of the quantity in the form of witness statements (primarily admissions from co-defendants), as well as recorded jail calls between Smith and another co-conspirator about the activities of the conspiracy. [DE 126 (Rearr. Tr.) at Page ID # 397]. Further, after discussing this evidence in open court, Thornton pleaded guilty and admitted all facts necessary to prove the essential elements of the conspiracy offense, including the quantity of actual methamphetamine for which he was responsible, and the record reflects an appropriate factual basis for Thornton's plea. *See Webster v. Streeval*, No. CV 0:19-111-HRW, 2019 WL 5848060,

at *3 (E.D. Ky. Nov. 7, 2019), *appeal dismissed sub nom. Webster v. Streeva*, No. 19-6455, 2020 WL 7585694 (6th Cir. Aug. 21, 2020) ("[T]he government was not required to prove anything because [the defendant] admitted all of the facts essential to sustain his conviction when he agreed to plead guilty."); *see id.* (quoting *United States v. Broce*, 488 U.S. 563, 569 (1989)) ("A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence.").

Thornton has not alleged any facts casting doubt on his prior sworn admissions, the referenced evidence supporting the quantity of actual methamphetamine, or the validity of his guilty plea.[2] He cannot show that there was insufficient evidence to support the quantity of conviction or that he was prejudiced by being unable to raise such an ostensibly meritless argument on appeal. Accordingly, he may not now raise an evidence sufficiency claim. Regardless, for the same reasons, the Court would recommend rejecting a sufficiency of the evidence claim directed at the quantity of conviction even if such a claim were cognizable in the current § 2255 posture.

### 2. Ineffective Assistance of Counsel

Thornton also functionally argues that his counsel was ineffective for failing to properly challenge or investigate the (allegedly insufficient) evidence in support of the quantity determination. The standard outlined in *Strickland v. Washington*, 466 U.S. 668 (1984), governs ineffective assistance of counsel claims. To prevail, a movant must prove (1) that defense counsel's performance was deficient, and (2) that the demonstrated deficiency prejudiced the movant. *Id*. at 687. To establish deficient performance, a movant must show that "counsel's representation fell below an objective standard of reasonableness." *Id*. at 687–88. "Judicial

---

[2] To the extent Thornton alleges that his plea was effectively uncounseled because of his counsel's deficient assistance, the Court addresses and recommends rejection of that contention below.

6

scrutiny of counsel's performance must be highly deferential[,]" and the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

A prejudice showing requires a "reasonable probability that, but for counsel's errors, the judicial outcome would have been different." *Id*. at 694–95. The Court "must consider the totality of the evidence" in assessing prejudice. *Id.* at 695 To satisfy the prejudice prong "[i]n a guilty plea context 'the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Campbell v. United States*, 686 F.3d 353, 357 (6th Cir. 2012) (*Hill v. Lockhart*, 474 U.S. 52, 59 (1985)); *Hodges v. Colson*, 727 F.3d 517, 539 (6th Cir. 2013). The movant must satisfy both prongs of the *Strickland* analysis, but courts need "not address both components of the deficient performance and prejudice inquiry if the defendant makes an insufficient showing on one." *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004) (internal quotation marks omitted). The Court may address the prongs in either order. *Strickland*, 466 U.S. at 697.

Thornton fails both prongs. First, he has not alleged any facts that would tend to show that counsel fell below an objective minimum standard of representation in this case. Thornton himself alleges that he discussed the evidence in support of the drug quantity with counsel prior to pleading guilty. And the rearraignment transcript confirms that Judge Boom asked counsel for the United States about the factual basis for the plea, and the United States summarized the supporting evidence in response. Thornton does not cite any evidence contradicting or undermining the factual basis for the plea as demonstrated by the hearing colloquy. Per the record, including Thornton's own narrative in this petition, it appears that defense counsel reasonably believed the quantity of methamphetamine to be supported beyond a reasonable doubt in his professional

7

opinion, and Thornton points to no facts (that he expressed to his counsel or otherwise) actually indicating that the quantity was inaccurate. To the extent he speculates that Smith could have had credibility issues that would impact the value of that evidence, Thornton waived the right to cross-examine the Government's evidence by pleading guilty—a trial right he knowingly waived after discussion with Judge Boom. [DE 126 at Page ID # 377 (Thornton expressly confirming that he understood and waived the right to have counsel "cross-examine witnesses called by the United States" at a trial). Thornton cannot now say that his counsel performed deficiently by failing to further probe post hoc, hypothetical issues with the Government's proof and case.

Nor has Thornton shown that he was prejudiced by counsel's alleged poor pre-plea quantity advice or investigation. He has not alleged any facts indicating that, had counsel further investigated the quantity evidence, the result would have been more favorable or would have convinced Thornton not to plead guilty as he did. Notably, Thornton claims in his petition that, prior to his change of plea hearing, he *did* discuss with counsel the co-conspirator statement basis for the quantity finding and, at that time, suspected that counsel may not have obtained a laboratory test for all samples. [*See* DE 205 at Page ID # 696 (Thornton stating that he asked his lawyer about the quantity basis "prior to pleading" and his "lawyer did not seem to know whether there was a test done of the substance" in addition to the body of co-conspirator and other evidence supporting its quantity and purity)]. Accordingly, and particularly given Thornton's concession that he discussed the quantity basis with counsel prior to pleading guilty, he has not shown that counsel's further investigation into unspecified, speculative issues surrounding the conviction quantity would have either lowered the applicable quantity or caused Thornton to insist upon proceeding to trial. *See United States v. Brummett,* No. CIV.A. 6:12-7200-DCR, 2013 WL 5798013, at *10 (E.D. Ky. Oct. 28, 2013) (rejecting a similar ineffective assistance claim where the defendant did

"not specify what facts his attorney failed to investigate or how these facts would have resulted in a lower drug quantity").

For these reasons, Thornton cannot show either deficient performance or prejudice related to his conviction quantity ineffective assistance claim, and the Court therefore recommends that Judge Boom deny it.[3]

**B.    GROUND 2**

Thornton's second ground for relief asserts that counsel was ineffective for failing to adequately apprise him of plea offers—specifically, a purported binding plea deal that could have resulted in a sentence that was four years shorter than the one he received—and, as a broader matter, of the sentencing consequences of his open plea. Thornton suggests that his plea was invalid. However, he has shown neither deficient performance or prejudice on this record, and his second *Strickland* claim fails. The Court recommends that Judge Boom likewise deny it.

---

[3] Even if the issues concerning the sentencing quantity were raised in Thornton's petition itself and were properly before the Court, the Court would recommend that Judge Boom reject them on their merits for essentially the same reasons already discussed in relation to the conviction quantity. The sentencing determination applies a lower burden of proof and a sweeping standard, and the evidence outlined in the PIR underlying Judge Boom's quantity determination fully supports the applied quantity per the relevant standards and burdens and appears to be a conservative estimate of Thornton's involvement, as is appropriate. *See* USSG § 1B1.3 (defining the relevant conduct standard in this context as conduct within the scope, in furtherance of, and reasonably foreseeable to the defendant in connection with the conspiracy); *United States v. McReynolds*, 964 F.3d 555, 563 (6th Cir. 2020) (stating that the drug quantity at sentencing is based on a defendant's relevant conduct with facts proved by a preponderance of reliable evidence). *Cf., e.g.*, 6th Cir. Pattern Jury Instr. No. 14.07A (providing that to sustain an aggravated quantity conviction, the jury must unanimously find that at least that amount was involved in the conspiracy, though the defendant did not have to know that amount was involved—he merely needed to know that the object of the criminal agreement was to distribute the controlled substance at issue). As with the overlapping evidence in support of the conviction quantity, Thornton has not alleged any facts refuting or casting doubt on the PIR's factual quantity findings as adopted by Judge Boom. The record thus does not support a finding that his counsel was deficient in declining to object to the sentencing quantity or resulting Guidelines, which appear to be correct and supported, or that further inquiry into that body of evidence would have resulted in a lower or more favorable quantity result at the sentencing stage.

Thornton cannot show that his counsel failed to adequately advise him of his plea options or of the consequences of his open plea. Thornton stated under oath at the change of plea hearing that he had had sufficient time to discuss the matter with counsel, was satisfied with the extent and quality of counsel's advice, and had discussed the possible sentencing consequences (including the Guidelines) with counsel to his satisfaction prior to the hearing. [DE 126 at Page ID # 379, 390]. Judge Boom asked defense counsel multiple times in the hearing whether he had discussed the Guidelines and other sentencing consequences (including the applicable mandatory minimum sentence) with Thornton; counsel repeatedly confirmed that he had, and Thornton at no point interjected to disagree. [*Id.* at Page ID # 388, 394-95]. At the end of the colloquy, Judge Boom further directly asked Thornton whether he had "any other questions . . . about making an open plea or a plea without a plea agreement[,]" and Thornton replied that he had none. [*Id.* at Page ID # 390-91]. Finally, Judge Boom expressly asked whether Thornton had any questions about the sentencing factors or Guidelines that he had not had a chance to ask counsel, and Thornton replied that he did not. [*Id.* at Page ID # 394]. Thornton proceeded to plead guilty, and Judge Boom accepted the plea as knowing, voluntary, and adequately based in fact. [*Id.* at Page ID # 400].

These sworn, in-court statements confirming Thornton's satisfaction with counsel's assistance, that he had sufficient time to so consult prior to pleading, and that he understood the potential sentencing consequences are presumed accurate and support the validity of his plea. "In order for a guilty plea to be constitutional it must be knowing, intelligent, voluntary, and made with sufficient awareness of the relevant circumstances and likely consequences." *Byars v. Gidley*, No. 16-2485, 2017 WL 4956919, at *2 (6th Cir. July 3, 2017) (citing *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005)). Critically, "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Consequently, "[t]he representations of

the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Id.* at 73–74. Later contrary, "conclusory allegations unsupported by specifics" are typically unpersuasive. *Id.* at 74. Thornton offers no specific facts in support of his contrary conclusory allegations that counsel failed to meet with him, to discuss plea options and consequences,[4] or to explain the Guidelines. These complaints directly contradict Thornton's sworn statements and the supported findings made at the rearraignment hearing. The record thus refutes Thornton's present bare claim that counsel performed deficiently in these regards.

Moreover, Thornton cannot show prejudice stemming from these alleged deficiencies. Even had defense counsel not apprised Thornton of the sentencing process and possibilities (again, directly contradicting Thornton's own sworn statements), Judge Boom's on-the-record discussion of those potential consequences cured any earlier misunderstanding for collateral relief purposes. [DE 126 at Page ID # 391-95]. *See, e.g.*, *Shakir v. United States*, No. 3:17-CV-00001, 2019 WL 5898579, at *10 (M.D. Tenn. Nov. 12, 2019) (quoting *United States v. Pola*, 703 F. App'x 414, 423 (6th Cir. 2017) ("When an ineffective-assistance claim is based on misleading information regarding the consequences of a plea, a proper plea colloquy is generally deemed to cure any misunderstanding the defendant may have had about the consequences of the plea."). Thornton thus cannot demonstrate on this record that he would not have pleaded guilty as he did had he more

---

[4] Thornton's allegation that he "later learned" of a binding plea option "that would have resulted in a sentence of about four years shorter" if accepted by the Court is so devoid of factual development as to be wholly incredible on this record. [DE 205 at Page ID # 697]. Thornton presents no further details concerning the substance of the agreement, how it would arrive at a sentence four years lower than the already substantially below-Guidelines sentence he received, or how he later learned about this purported offer after pleading guilty. And given the strict standards surrounding judicial consideration and acceptance of a binding plea agreement, Thornton's unadorned allegations are implausible in light of his conviction and ultimately attributed quantities. The conclusory statements in Thornton's petition thus create no fact issue.

11

fully discussed such consequences with counsel. No prejudice therefore pertains. Further, insofar as Thornton alleges that he could have received a binding sentence of four years shorter under different plea circumstances, he has not credibly alleged (much less factually shown) that such an outcome plausibly could have resulted. Thornton already received a substantial downward variance (of 36 months) below his applicable Guidelines range of 210-262 months. He thus has not shown that he had the option to take advantage of a binding plea that would result in a lower sentence or, correspondingly, that he was prejudiced by being unable to take advantage of it.

For all of these reasons, Thornton's Ground 2 ineffective assistance of counsel claims fail both *Strickland* prongs, and the Court recommends that Judge Boom deny them.

C.   **NEED FOR A HEARING**

The Court must conduct an evidentiary hearing on Thornton's claims "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). *See also* Rule 8(a) of the Rules Governing Section 2255 Cases in the United States District Courts (directing the Court to examine the filings and record "to determine whether an evidentiary hearing is warranted). The Court must hold a hearing where the petitioner raises a factual dispute underlying her claims, and "[t]he burden for establishing an entitlement to an evidentiary hearing is relatively light[.]" *Martin v. United States*, 889 F.3d 827, 832 (6th Cir. 2018). However, "where the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact[,]" no evidentiary hearing is required. *Id.*

As thoroughly discussed above, the records and files of this case (namely the change of plea transcript, as well as the PIR and facts there memorialized) demonstrate that Thornton's guilty plea was valid, that it was supported by a sufficient basis in fact, and that he received

constitutionally effective assistance during the proceedings. Even accepting Thornton's version of events concerning his Ground 1 claims, counsel provided reasonable advice as to the evidentiary basis for the quantity determination, and Thornton does not aver that he provided any contrary information during his consultation with counsel that would have required further investigation. Similarly, no fact issues surrounding Thornton's Ground 2 claims warrant an evidentiary hearing, given Thornton's contrary sworn statements during the change of plea hearing. Thornton's current conclusory and/or implausible allegations in his motion, unsupported by facts and devoid of developed argumentation, do not refute or cast doubt on the otherwise clear record in this matter and do not necessitate an evidentiary hearing.

### III.   CERTIFICATE OF APPEALABILITY

A certificate of appealability ("COA") shall issue only if a defendant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (addressing issuance of a certificate of appealability in the context of a habeas petition filed under 28 U.S.C. § 2254, which legal reasoning applies with equal force to motions to vacate brought pursuant to 28 U.S.C. § 2255). In cases where a district court has rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists would not debate the merits Defendant's § 2255 motion or conclude that the issues warrant further review. *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Based on the full record, there is not a reasonably debatable question as to whether the Court can properly consider the sufficiency of the evidence underlying Thornton's conviction in this posture, as to whether counsel was constitutionally ineffective in inducing the plea or failing to explain its consequences, or as to whether Thornton's guilty plea was valid. Throughout the record, Thornton's sworn, factually supported in-court representations flatly contradict his current motion's generalized, self-serving statements. He has provided no factual or legal basis for the relief sought.

Accordingly, it is **RECOMMENDED** that a certificate of appealability be **DENIED** upon the District Court's entry of its final order in this matter.

## IV.    CONCLUSION

For the reasons stated in this decision, the Court **RECOMMENDS** that:

1) the District Court **DENY**, with prejudice, Defendant's § 2255 motion [DE 205] as to all claims raised; and

2) the District Court **DENY** a certificate of appealability as to all issues, should Thornton seek one.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of said statute. As defined by § 636(b) (1), Fed. R. Civ. P. 72(b), Fed. R. Crim. P. 59(b), and local rule, within fourteen days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, *de novo*, by the District Court.

Entered this the 18th day of April, 2022.



Signed By:
Matthew A. Stinnett
United States Magistrate Judge